UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:24-CV-22267-BLOOM

BFL METAL PRODUCTS CO. LTD.,

        Plaintiff,

v.

RDFN FUM NATURAL PRODUCTS, LTD.,
BRAEDEN W. PAULS, and JOSIAH J.
PAULS,

        Defendants,
_____/

**PLAINTIFF BFL METAL PRODUCTS CO. LTD.'S MOTION TO DISQUALIFY DEFENDANTS' COUNSEL AND INCORPORATED MEMORANDUM OF LAW**

    Plaintiff BFL Metal Products Co. Ltd ("Plaintiff" or "BFL"), pursuant to Rules 4-1.9 and 4-1.10 of the Rules Regulating the Florida Bar and Rule 11.1(c) of the Local Rules for the Southern District of Florida, hereby move this Court to disqualify Johnson & Martin, P.A. as counsel for Defendants RDFN FUM Natural Products, Ltd. ("RDFN"), Braeden W. Pauls ("B. Pauls") and Josiah J. Pauls ("J. Pauls") (collectively, "Defendants") in this action, and state as follows:

**BACKGROUND**

    BFL initiated this action against Defendants by filing its initial complaint on June 12, 2024 (ECF No. 1), asserting claims for trademark infringement and unfair competition in violation of the Lanham Act, and unfair competition in violation of Florida common law. On August 6, 2024, counsel for BFL held a call with Michael P. Kahn from Akin Gump Strauss Hauer & Feld, LLP's New York Office who advised that he would be representing Defendants as a pro hac vice attorney. The purpose of such conferral was to address Defendants' upcoming deadline to respond to BFL's

1

complaint. Mr. Kahn advised Defendants were in the process of retaining local counsel in Florida, and therefore, requested BFL to file a motion for extension of time for Defendants to respond to the initial complaint. (ECF No. 10.) This Court granted the underlying motion for extension (ECF No. 11) and ordered Defendants to respond to the initial complaint by November 4, 2024.

On August 12, 2024, Johnson & Martin, P.A. ("J&M"), via attorney Mr. Nelles, contacted the undersigned to advise that he would potentially be representing Defendants and requested that BFL waive any conflict of interest with respect to J&M's prior representation of BFL in various trademark matters. *See* **Exhibit 1** (email correspondence between Mr. Nelles). Via telephone, the undersigned advised Mr. Nelles that he would speak to BFL but would recommend BFL not agree to such a waiver. Two days later, on August 14, 2024, Mr. Nelles advised that after a review of the matter, it was J&M's position that there was no conflict of interest despite serving as BFL's trademark attorneys. *Id*. One day later on August 15, 2024, the undersigned, through email correspondence, reiterated BFL's position that a conflict indeed existed. *Id.*

On November 4, 2024, RDFN, through J&M, nonetheless filed its Answer and Affirmative Defenses to BFL's initial complaint (ECF No. 15), and B. Pauls and J. Pauls jointly filed a Motion to Dismiss BFL's initial complaint (ECF No. 14). In response to B. Pauls and J. Pauls' Motion to Dismiss, BFL filed its First Amended Complaint on November 18, 2024. (ECF No. 16) (the "Complaint"). Both pleadings from Defendants include Mr. Nelles of J&M as signing attorney. J&M's website lists Mr. Nelles as a partner, board certified intellectual property lawyer and registered patent attorney. *See* **Exhibit 2** (printout of profile for Mr. Nelles on J&M's firm website).

Central to the issue of disqualification is the fact that J&M, via James David Johnson (who co-founded J&M), formerly represented BFL as trademark counsel before the United States Patent & Trademark Office ("USPTO"). *See* https://www.johnsonmartinlaw.com/about-us/ (last visited

Nov. 21, 2024). In addition to being a founder and shareholder, Mr. Johnson is "the head of [J&M]'s intellectual property. . . department." **Exhibit 3** (printout of profile for Mr. Johnson on J&M's firm website)[1]. Mr. Johnson has acted as "the head of [J&M]'s intellectual property. . . department" since 2014. *See* **Exhibit 4** (Archive.org captures of Mr. Johnson's firm profile from Oct. 12, 2014, Aug. 18, 2015, Oct. 13, 2017, May 5, 2018, Aug. 15, 2020, June 25, 2021, Aug. 20, 2022, and Nov. 28, 2023). The instant dispute concerns intellectual property, and more specifically trademark rights, and falls under Mr. Johnson's role with J&M as head of the intellectual property department. As BFL's trademark counsel, J&M, via its intellectual property department head and founding shareholder Mr. Johnson, filed seven (7) trademark applications on behalf of BFL and assumed representation of two (2) of BFL's trademark registrations before the USPTO.

Further, J&M, via Joshua D. Martin (who also co-founded J&M), formerly represented BFL as litigation counsel. https://www.johnsonmartinlaw.com/about-us/. (last visited Nov. 21, 2024). In addition to being a founder and shareholder, Mr. Martin is "the head of [J&M]'s litigation department." **Exhibit 5** (printout of profile for Mr. Martin on J&M's firm website). Mr. Martin has acted as "the head of [J&M]'s litigation department" since 2014. *See* **Exhibit 6** (Archive.org captures of Mr. Martin's firm profile from Oct. 11, 2014, Aug. 18, 2015, Oct. 13, 2017, September 19, 2021, Aug. 20, 2022, and Nov. 28, 2023). The instant dispute is also an active litigation case involving trademark rights and falls under Mr. Martin's role with J&M as head of the litigation department. As BFL's litigation counsel, J&M, via its litigation department head and founding shareholder Mr. Martin, initiated an opposition proceeding before the Trademark Trial and Appeal Board ("TTAB") concerning BFL's trademark rights.

---

[1] On the J&M website, Mr. Johnson appears to go by the name "David Johnson." However, on the Florida Bar's website, as well as filings done on behalf of BFL (discussed more below), Mr. Johnson uses the name "James David Johnson." *See* https://www.floridabar.org/directories/find-mbr/profile/?num=578029.

3

Finally, J&M, via its intellectual property department head and founding shareholder Mr. Johnson, represented Partes Mundo Ltd. ("Partes Mundo), BFL's predecessor-in-interest for the **FUM** mark, and filed the application for U.S. Trademark Registration No. 4,775,267 for **FUM** in International Classes 30 and 34 (the "**FUM** Registration"). J&M's own files – for Partes Mundo and Tampa Fum, Corp., also BFL's predecessor -in-interest and current licensee for the **FUM** mark, and former client of J&M – feature heavily in the requests J&M served on BFL on November 25, 2024. **Exhibit 7** (Defendants' First Set of Requests for Production on BFL). The **FUM** Registration, along with the **FUM** Logo Mark[2], form the basis for BFL's three-count complaint against Defendants. As stated in the Complaint, the **FUM** mark and the **FUM** Registration were assigned to BFL in mid-2022. *See* Complaint, ¶¶ 4, 42. J&M, via founding shareholder and intellectual property department head, Mr. Johnson, was still BFL's trademark counsel and was actively performing work for BFL when it acquired rights in the **FUM** mark and the **FUM** Registration. J&M was further, via founding shareholder and litigation department head, Mr. Martin, advising BFL on litigation strategy at this time. J&M now stands to prevent BFL from enforcing the trademark portfolio BFL built while being advised by J&M concerning trademarks — and trademark litigation. On these facts, J&M should be disqualified as counsel for Defendants.

## LEGAL STANDARD

While a party does possess a right to retain counsel of his or her choice, this right is not without restriction. *See Senesac v. Winn-Dixie Stores*, Case No. 10-60016-CIV-ZLOCH/ROSENBAUM, 2010 U.S. Dist. LEXIS 154314, 2010 WL 11597658, at *6 (S.D. Fla. June 17, 2010) ("A party's right to retain counsel of his or her choice, however, is not unfettered."); *see also Bancor Grp., v. Rodriguez*, Case No. 1:22-cv-20201-GAYLES/TORRES, 2023 U.S. Dist.

---

[2] As defined in paragraph 47 of the Complaint.

LEXIS 65208, 2023 WL 2954463, at *5 (S.D. Fla. Apr. 13, 2023 ) (citing *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983)) ("In other words, one's right to the counsel of their choice does not equate to an absolute freedom of said choice: '[counsel] must not have a conflict of interest with another party.'")

The two sources of authority governing motions to disqualify counsel are the local rules of the relevant court in which counsel appears, and federal common law. *See Rodriguez,* 2023 U.S. Dist. LEXIS 65208, at *5 (quoting *Herrmann v. GutterGuard, Inc.*, No.06-11306, 199 Fed. App'x. 745, 752 (11th Cir. Sept. 11, 2006)) ("'Motions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear…Second, federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of parties.'"); *id.* at *6 (citing *Bedoya v. Aventura Limousine & Transp. Service, Inc.*, No.11-24432-CIV, 2012 U.S. Dist. LEXIS 59862, 2012 WL 1534488, at *1 (S.D. Fla. Apr. 30, 2012)) ("…Florida law states, '[a]n order involving the disqualification of counsel must be tested against the standards imposed by the Rules of Professional Conduct.'") Rule 11.1(c) of the Local Rules for the Southern District of Florida provides "[t]he standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating the Florida Bar." S.D. Fla. L. R. 11.1(c).

One of the relevant rules at issue here is Rule 4-1.9 of the Rules Regulating the Florida Bar, which governs conflicts of interest pertaining to former clients. It reads as follows:

A lawyer who has formerly represented a client in a matter must not afterwards:

> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;

> (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or
>
> (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

R. Regulating the Fla. Bar 4-1.9.

The second rule implicated by the facts of this case is Rule 4-1.10 of the Rules Regulating the Florida Bar, which discusses conflicts imputed to all lawyers within a firm and reads (in relevant part) as follows:

> (a) Imputed Disqualification of All Lawyers in Firm. While lawyers are associated in a firm, none of them may knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9 except as provided elsewhere in this rule, or unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

R. Regulating the Fla. Bar 4-1.10(a). In other words, Rule 4-1.10 "precludes law firms from representing a client where any member of the firm, practicing alone, would be prohibited from doing so." *Winn-Dixie Stores*, 2010 U.S. Dist. LEXIS 154314, at *7.

A party moving to disqualify counsel pursuant to Rule 4.1-9 of the Rules Regulating the Florida Bar bears the burden of demonstrating that (1) there existed an attorney-client relationship and (2) the present action is substantially related to the prior representation. *See Sutton v. Seaman*, Case No. 13-61933-CIV-ROSENBAUM/HUNT, 2014 U.S. Dist. LEXIS 201234, at *14 (S.D. Fla. January 24, 2014); *see also Rodriguez*, 2023 U.S. Dist. LEXIS 65208, at *6-7 (citing *State Farm Auto. Isn. Co. v. K.A. W.*, 575 So. 2d 630, 633 (Fla. 1991)) ("Florida courts have concluded that, to succeed on a motion for disqualification under the rule, the movant must establish: '(1) an attorney-client relationship existed, thereby giving rise to an *irrefutable presumption* that confidences were disclosed during the relationship, and (2) the matter in which the law firm

6

subsequently represented the interest adverse to the former client was the same or *substantially related* to the matter in which it represented the former client.'") In discussing whether the matters are substantially related, the Comment to Rule 4-1.9 states "[m]atters are 'substantially related' for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client." Comment to Rule 4-1.9, R. Regulating the Fla. Bar. This Court has further discussed "substantially related" to mean "whether the previous matters are akin to the present action in a way that a reasonable person would understand as important to the issues." *Winn-Dixie Stores*, 2010 U.S. Dist. LEXIS 154314, at *8 (citing *McPartland v. ISI Investment Services, Inc.*, 890 F. Supp. 1029 (M.D. Fla. 1995)). Pursuant to Rule 4-1.9(b), a party moving to disqualify may also demonstrate that information obtained by his former counsel will be used to disadvantage him. *See Sutton*, 2014 U.S. Dist. LEXIS 201234, at *14.

## ARGUMENT

### A. Prior Attorney-Client Relationship Exists Between BFL and J&M (R. Regulating the Fla. Bar. 4-1.9(a))

1. <u>J&M, via Founding Shareholder and Intellectual Property Department Head Mr. Johnson, Filed and Maintained Trademarks on Behalf of BFL</u>

J&M, via founding shareholder and intellectual property department head Mr. Johnson, filed seven (7) different trademark applications with the USPTO on behalf of BFL. *See* **Exhibits 8-14** (trademark applications filed by J&M, via Mr. Johnson, on behalf of BFL). These applications were filed between November 22, 2021, and November 29, 2022, and include the following (some of which have registered, others which eventually became abandoned):

- U.S. Application Serial No. 97/250,521 for **VIPER and Design**;

- U.S. Trademark Registration No. 7,567,146 for **FUME**[3];

- U.S. Application Serial No. 97/250,475 for **VIPER**;

- U.S. Application Serial No. 97/138,107 for **FUME VAPES and Design;**

- U.S. Application Serial No. 97/696,094 for **QR JOY**;

- U.S. Trademark Registration No. 7,064,057 for **BFL Infinity Trade Dress**[4];

- U.S. Application Serial No. 97/138,092 for **FUME and Design**;

**Exhibits 8-14.**

In addition to the above marks, J&M, via Mr. Johnson, assumed representation of the following two (2) registrations on behalf of BFL:

- U.S. Trademark Registration No. 6,876,542 for **QR Joy and Design**[5];

- U.S. Trademark Registration No. 6,442,788 for **BFLVAPORS**[6].

*See* **Exhibits 15 and 16** (Change of Representation Forms filed with USPTO for **QR JOY and Design** and **BFLVAPORS** marks).

A chart detailing the nine (9) marks identified above, including the action J&M took with respect to prosecuting and/or maintaining each mark, is found below:

| No. | Mark | Serial/Reg. No. | Filing Attorney/Firm | Relevant Dates |
|---|---|---|---|---|
| 1 | | Serial No. 97/250,521 | James David Johnson, Johnson & Martin, P.A. | Feb. 2, 2022: Filed Application<br><br>Mar. 13, 2023: Mark went abandoned |

---

[3] Filed as Serial No. 97/137,947.
[4] Filed as Serial No. 97/261,892.
[5] Filed as Serial No. 97/033,899.
[6] Filed as Serial No. 90/041,001.

| | | | | |
|---|---|---|---|---|
| | **VIPER and Design** | | | |
| 2 | **FUME** | Reg. No. 7,567,146 | James David Johnson, Johnson & Martin, P.A. | Nov. 22, 2021: Filed Application<br><br>Mar. 2, 2023: Responded to Office Action<br><br>July 6, 2023: Representation ended |
| 3 | **VIPER** | Serial No. 97/250,475 | James David Johnson, Johnson & Martin, P.A. | Feb. 2, 2022: Filed Application<br><br>Mar. 13, 2023: Mark went abandoned |
| 4 | **FUME VAPES and Design** | Serial No. 97/138,107 | James David Johnson, Johnson & Martin, P.A. | Nov. 22, 2021: Filed Application<br><br>Mar. 2, 2023: Responded to Office Action<br><br>July 6, 2023: Representation ended |
| 5 | **QR JOY** | Serial No. 97/696,094 | James David Johnson, Johnson & Martin, P.A. | Nov. 29, 2022: Filed Application<br><br>July 6, 2023: Representation ended |
| 6 | | Reg. No. 7,064,057 | James David Johnson, Johnson & Martin, P.A. | Feb. 10, 2022: Filed Application<br><br>Mar. 8, 2022: Filed Petition to Make Special[7]<br><br>Mar. 2, 2023: Responded to Office Action on |

---

[7] J&M filed this petition with USPTO requesting that the USPTO make the application special because on an ongoing dispute pertaining to infringement.

| | | | | |
|---|---|---|---|---|
| | **BFL Infinity Trade Dress** | | | July 6, 2023: Representation ended |
| 7 | **FUME and Design** | Serial No. 97/138,092 | James David Johnson, Johnson & Martin, P.A. | Nov. 22, 2021: Filed Application<br><br>Mar. 2, 2023: Responded to Office Action<br><br>July 6, 2023: Representation ended |
| 8 | **QR Joy and Design** | Reg. No. 6,876,542 | Yatong Ju, Ju Law Office LLC | March 4, 2022: Johnson and J&M assumed representation<br><br>July 6, 2023: Representation ended |
| 9 | **BFLVAPORS** | Reg. No. 6,442,788 | Jie Luo Woodruff & Luo, LLC | Jan. 25, 2022: Johnson and J&M assumed representation<br><br>July 6, 2023: Representation ended |

*See e.g.* **Exhibits 8-16**; **Exhibits 17-21** (Office Action responses and Petition to Make Special submitted by J&M, via Mr. Johnson, on behalf of BFL); **Exhibits 22-28** (Change of Representation forms filed on July 6, 2023 with the USPTO for **FUME**, **FUME VAPES and Design, QR JOY**, **BFL Infinity Trade Dress**, **FUME and Design**, **QR JOY and Design**, and **BFLVAPORS**).

For all but two of these marks, J&M and Mr. Johnson remained attorney of record until July 6, 2023, a mere sixteen (16) months ago. *Id.* BFL makes reference to, and asserts its rights in,

10

three of these marks (**QR JOY and Design**, **FUME** and **FUME and Design**) in the Complaint. *See* Complaint, ¶¶ 1, 2. These three marks, specifically, were maintained by J&M until July 6, 2023. *See* **Exhibits 22, 26 and 27.**

Based on the above, a prior attorney-client relationship exists between BFL and J&M.

2. <u>J&M, via Founding Shareholder and Litigation Department Head Mr. Martin, Initiated an Opposition Proceeding on Behalf of BFL</u>

Another course of action J&M took on behalf of BFL was initiating Opposition Proceeding No. 91273089 before the TTAB against Fume LLC, concerning BFL's **FUME** and **FUME and Design** marks. *See* **Exhibit 29** (BFL's November 21, 2021 Notice of Opposition). The Notice of Opposition was filed by J&M, via founding shareholder and litigation department head Mr. Martin. *Id.* J&M remained counsel of record for this opposition proceeding until March 8, 2022. *See* **Exhibit 30** (Notice of Appearance filed on behalf of BFL).

Based on the above, a prior attorney-client relationship exists between BFL and J&M.

3. <u>The Prior Attorney-Client Relationship Also Extends to Mr. Nelles as Partner at J&M</u>

Courts have also held that "'presumed access of a partner to confidential information imputes knowledge of that information to others in his firm.'" *Rodriguez*, 2023 U.S. Dist. LEXIS 65208, at *11 (quoting *Sears, Roebuck & Co. v. Stansbury*, 374 So. 2d 1051, 1053 (Fla. 5th DCA 1979)). When a direct attorney-client relationship has been established with a partner and his or her firm, "'there is an irrebuttable presumption [that] members of the firm have obtained confidential knowledge from the relationship.'" *Id.* (citing *Matter of Outdoor Prods. Corp.*, 183 B.R. 645, 648-49 (Bankr. M.D. Fla. 1995)).

The Eleventh Circuit has previously addressed a conflict challenge stemming from a partner's representation of a client. *See Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725 (11th. Cir. 1988). In *Cox*, attorney Robert L. Wiggins never directly represented the American Cast Iron

11

Pipe Company ("ACIPCO"). *Id*. at *729-30. However, his <u>current</u> partner, Robert F. Childs, Jr., represented ACIPCO at his prior firm. *Id*. The Eleventh Circuit stated that because Mr. Childs participated in an attorney-client relationship with ACIPCO, his knowledge of ACIPCO's confidential information was imputed to his current partners and employees. *Id.* ("Because Childs actually represented ACIPCO, he is charged with the virtually unrebuttable presumption that he has received confidential information from the company…In addition, Childs' knowledge may be imputed to his current partners and employees.") Therefore, the Court found an attorney-client relationship had been established between Mr. Wiggins and ACIPCO. *Id.* This Court has used similar reasoning in finding that an attorney-client relationship existed between an attorney and client when that attorney's former partner represented the client in a prior matter, even though the attorney who was the subject of the disqualification was not directly involved in the prior representation and was no longer a part of the same firm. *See Rodriguez,* 2023 U.S. Dist. LEXIS 65208, at *14. The facts of this case are clearer than those outlined in *Cox* and *Rodriguez*. Mr. Johnson previously represented BFL as trademark counsel at his <u>current</u> firm, J&M, where he holds the title of shareholder and head of the intellectual property department. Mr. Martin previously represented BFL as litigation counsel at his <u>current</u> firm, J&M, where he holds the title of shareholder and head of the litigation department. Mr. Nelles, a current partner at J&M, is now representing Defendants in an intellectual property dispute, seeking to limit, if not eliminate, part of the trademark portfolio BFL built while J&M was BFL's trademark counsel, as shown by USPTO records, and J&M's litigation department, via founding shareholder Mr. Martin, helped defend. (*See* ECF No. 15, at 9-10) (asserting affirmative defenses which would result in cancellation of BFL's trademark registration). Therefore, Mr. Johnson and Mr. Martin's knowledge of BFL's confidential matters is imputed to their current partners and employees, which

12

includes Mr. Nelles and those at the J&M. Thus, an attorney-client relationship is also established as to Mr. Nelles.

### B. The Prior and Current Matters are Substantially Related (R. Regulating the Fla. Bar. 4-1.9(a))

The matters presently involved in this litigation are substantially related to the matters in which J&M represented BFL. *Id.* at *14-15. J&M, via Mr. Johnson as shareholder and head of the intellectual property department, filed trademark applications on behalf of BFL and prosecuted and maintained trademarks on behalf of BFL. All three counts in the Complaint are based upon BFL's asserted trademark rights. As stated above, three (3) of the marks which are referenced in the Complaint, at one point in time, were filed and/or maintained by Mr. Johnson and J&M. *See e.g.* Complaint, ¶¶ 1, 2; **Exhibits 22, 26 and 27.** For example, in asserting its rights against Defendants, BFL relies on its rights in the **FUME** mark. *See* Complaint, ¶¶ 2-3, 36-40. J&M, via founding shareholder and intellectual property department head Mr. Johnson, not only filed Serial No. 97/137,947 for **FUME** (which since matured into U.S. Reg. No. 7,567,146), but also responded to an Office Action from the USPTO where the examining attorney (a) cited prior filed applications against the **FUME** mark on the basis of a potential likelihood of confusion; and (b) believed the **FUME** mark to be merely descriptive of the goods for which the mark was being used. *See* **Exhibits 31 and 17.** Therefore, in the capacity as trademark counsel, J&M would have been required to determine whether BFL was sufficiently using the **FUME** mark in commerce, whether such use was confusingly similar to that of third-parties, whether BFL had priority of rights as to the **FUME** mark, and finally, whether the **FUME** mark acquired distinctiveness based on BFL's continuous use. These very matters are at issue in this case. Specifically, BFL must demonstrate that it has sufficiently maintained its rights in the **FUM** mark and **FUM** Registration,

13

but that it also maintained its rights in the **FUME** mark and registration, which was directly handled by J&M until July 6, 2023. *See* **Exhibit 22**.

Further, as stated above, J&M, via Mr. Martin as shareholder and head of the litigation department, initiated an opposition proceeding against Fume LLC concerning BFL's rights in the **FUME** and **FUME and Design** marks. *See* **Exhibit 29.** BFL makes reference to, and asserts its rights in, both of these marks in the Complaint. *See* Complaint, ¶¶ 1, 2. The opposition proceeding was resolved through an agreement between BFL and Fume LLC, which led to BFL's acquisition of the **FUM** Registration. *See e.g.* **Exhibit 32** (July 26, 2022 Stipulation of Dismissal); *See* **Exhibit 33** (USPTO record for Trademark Assignment assigning the **FUM** Registration to BFL). While the undersigned handled the resolution of the opposition proceeding against Fume LLC, J&M requested a copy of the fully executed settlement agreement between the parties, including all exhibits thereto, because they were needed to handle certain matters on behalf of BFL. The exhibits to the settlement agreement included trademark assignments, one of which is the document assigning the **FUM** Registration to BFL. There is no other reasonable interpretation to be made from J&M's request other than BFL's acquisition of the **FUM** mark, which forms the basis of the Complaint, related to the work J&M was performing for BFL in 2022. The inclusion of the **FUM** Registration and associated assignment as part of the matters J&M was addressing for BFL implicates RDFN's first affirmative defense — that of BFL's purported failure to timely enforce the **FUM** Registration, and the resulting application of laches to BFL's claims. (ECF No. 15, at 10.) J&M now stands to assist a third party in curtailing BFL's ability to enforce rights J&M previously advised on.

The November 25, 2024, requests for production (collectively the "Requests," individually a "Request") further substantiate how J&M's continued representation of Defendants in this matter

14

violates Florida Bar Rule 4-1.9(a). The Requests include all "predecessors in interest <u>and</u> any prior owner of Plaintiff's FUM Designation", in other words the **FUM** Registration and any underlying common law rights, in every document request involving the terms "BFL Metal," "You," and "Your." **Exhibit 7,** at 1-2; Complaint, ¶ 4. As discussed above, this includes Partes Mundo, for whom J&M prosecuted the **FUM** Registration.

Requests 2, 3, 6, 22, and 35 encompass work J&M has done for both Partes Mundo, as BFL's predecessor in interest, as well as BFL. **Exhibit 7,** at 5-7. In sum these Requests seek at least (i) all communications by BFL and/or Partes Mundo with J&M concerning Defendants' infringement of the **FUM** Registration; (ii) all documents reflecting any investigation by BFL and/or Partes Mundo as conducted by J&M concerning Defendants' infringement of the **FUM** Registration; and, (iii) "[a]ll opinion letters or other Documents, whether form lawyers or otherwise, opining on the validity or enforceability" of the **FUM** Registration – which would include those penned by J&M as part of the attorney-client relationship. *Id.* By serving these Requests, J&M has demanded that BFL acquire J&M's files, to produce to J&M, so J&M can use its own files in this action. This includes the attorney-client communications with J&M concerning the **FUM** Registration addressed above. J&M's prior attorney-client relationship with BFL and its predecessors in interest are substantially related to the instant matter for the additional reason that J&M is seeking its own work in discovery.

The previous matters in which J&M was involved are substantially related to the present action in such a way that "a reasonable person would understand as important to the issues." *Winn-Dixie Stores*, 2010 U.S. Dist. LEXIS 154314, at *8 (citing *McPartland v. ISI Investment Services, Inc.*, 890 F. Supp. 1029 (M.D. Fla. 1995)). This, coupled with the fact that a prior attorney-client

15

relationship existed between BFL and J&M, leaves room for no other conclusion except that pursuant to Rule 4-1.9, J&M should be disqualified as counsel for Defendants.

### C. The Conflict is Imputed to J&M as a Whole (R. Regulating Fla. Bar. 4-1.10(a))

Rule 4-1.10 of the Rules Regulating the Florida Bar addresses the issue of conflicts arising with lawyers who are actively still associated with the same firm. *See* R. Regulating the Fla. Bar 4-1.10. More specifically, subsection (a) of the Rule states that "[w]hile lawyers are associated in a firm, none of them may knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9…" *Id.*

As outlined above, J&M, via founding shareholder and intellectual property department head Mr. Johnson, filed seven (7) trademark applications on behalf of BFL and assumed representation of two (2) of BFL's trademark registrations. Further, J&M, via founding shareholder and litigation department head Mr. Martin, initiated an opposition proceeding before the TTAB asserting BFL's trademark rights against a third-party. Therefore, pursuant to Rule 4-1.9, Mr. Johnson is prohibited from representing BFL because a prior attorney-client relationship exists, and the current matters of this case are substantially related to the prior matters which governed the previous representation. In other words, practicing alone, Mr. Johnson would not be able to represent BFL. In addition, Mr. Martin is prohibited from representing BFL because a prior attorney-client relationship exists, and the current matters of this case are substantially related to the prior matters which governed the previous representation. Practicing alone, Mr. Martin would not be able to represent BFL. Both conflicts are imputed to all attorneys associated at J&M, which includes Mr. Nelles, who is the only attorney from J&M that has made an appearance on behalf of Defendants in this case. Additionally, as shown above, BFL has established that the prior attorney-client relationship that exists between Mr. Johnson and BFL and Mr. Martin and BFL extends to

Mr. Nelles as a current partner at the same firm. Further, because the matters relating to the previous representation are substantially related to the matters at issue in this case, Mr. Nelles is further disqualified under Rule 4.1-9. Practicing alone, Mr. Nelles is also unable to present BFL, and this conflict is again, imputed to all attorneys associated at J&M.

For the reasons stated above, every lawyer at J&M is prohibited from representing Defendants in this matter.

### D. J&M is Further Disqualified Because of Prior Knowledge of BFL and of the FUM mark

As established above, a prior attorney-client relationship existed between BFL and J&M. This fact gives rise to "an irrefutable presumption that confidences were disclosed during the relationship," which includes, the specific ways BFL uses, maintains and enforces its trademarks. *Rodriguez*, 2023 U.S. Dist. LEXIS 65208, at *6-7 (citing *State Farm Auto. Isn. Co. v. K.A. W.*, 575 So. 2d 630, 633 (Fla. 1991)). Rule 4.-1.9(b) of the Rules Regulating the Florida Bar calls for disqualification of an attorney who uses information relating to the former representation to the disadvantage of the former client. *See* R. Regulating the Fla. Bar 4-1.9(b). Having already been privy to the ways in which BFL uses, maintains and enforces its mark, which also specifically includes the **FUME** mark which (a) J&M, via founding shareholder and intellectual property department head Mr. Johnson, filed a trademark application for and prosecuted until July 6, 2023; (b) J&M, via founding shareholder and litigation department head Mr. Martin initiated an opposition proceeding and the resolution of such proceeding included BFL's acquisition of the **FUM** mark and **FUM** Registration; and (c) BFL names against Defendants in the Complaint, J&M cannot reasonably take the position that there is no possibility that this prior knowledge can be used (even if inadvertently) in a manner to disadvantage BFL.

17

Further, BFL acquired rights in the **FUM** name and **FUM** Registration in July of 2022. **Exhibit 33.** After July 2022, J&M, via founding shareholder and intellectual property department head Mr. Johnson, took the following action on behalf of BFL:

- Responded to an Office Action for Reg. No. 7,567,146 for **FUME** on March 2, 2023;

- Responded to an Office Action for Serial No. 97/138,107 for **FUME VAPES and Design** on March 2, 2023;

- Filed trademark application Serial No. 97/696,094 for **QR JOY** on November 29, 2022;

- Responded to an Office Action for Reg. No. 7,064,057 for **BFL Infinity Trade Dress** on March 2, 2023; and

- Responded to an Office Action for Serail No. 97/138,092 for **FUME and Design** on March 2, 2023;

*See* chart above, at 8-10.

Equally concerning is the fact that J&M, via founding shareholder and intellectual property department head Mr. Johnson, on behalf of Partes Mundo, filed the original application for the **FUM** Registration. *See* **Exhibit 34** (May 2, 2014 original trademark application for the **FUM** Registration). J&M filed the application for the **FUM** Registration on the basis of use, and Partes Mundo asserted a first use in commerce date of February 3, 2014. *See id.* J&M, via founding shareholder and intellectual property department head Mr. Johnson, assisted Partes Mundo with prosecuting the **FUM** application, which included filing a February 23, 2015 response to an Office Action issued by the USPTO. *See* **Exhibit 35** (Response to Office Action filed by Mr. Johnson and J&M). The Office Action required Partes Mundo to amend the description of goods identified in the application and to confirm whether "FUM" has any significance in the relevant industry, or whether it is a term of art within the relevant industry. *Id.* The mark eventually registered on July 21, 2015. *See* **Exhibit 36**. Additionally, J&M, as counsel for Partes Mundo, was involved in the

original assignment of the **FUM** Registration to Tampa Fum, Corp., and then involved in the assignment from Tampa Fum, Corp. to Fume LLC (who eventually assigned BFL the **FUM** mark and **FUM** Registration.) Mr. Johnson was attorney of record for the **FUM** Registration until September 9, 2021 (after the dates of the first and second assignment of the **FUM** Registration), when maintenance documents were filed with the USPTO, indicating new counsel. *See* **Exhibit 37**.

BFL acquired rights in the **FUM** mark and the **FUM** Registration around July of 2022 — at which time, J&M, via founding shareholder and intellectual property department head, Mr. Johnson, was still BFL's trademark counsel, as discussed above.  BFL brings the instant action against Defendants based on its acquired rights in the **FUM** mark and **FUM** Registration. In the capacity as counsel for Partes Mundo, the original owner of the **FUM** mark and **FUM** Registration, J&M (and by extension Mr. Johnson, Mr. Martin and Mr. Nelles) were privy to the ways in which Partes Mundo was using the **FUM** mark in commerce, how Partes Mundo was maintaining the mark, and discussions concerning Partes Mundo's assignment of the mark.  Now having the knowledge of how the original owner of the **FUM** Registration was using and maintaining the mark, J&M through its representation of Defendants, unfairly asserts abandonment of the **FUM** mark as an affirmative defense against BFL in the Complaint. *See* RDFN's Answer and Affirmative Defenses (ECF No. 15).  Based on these additional facts, this Court should disqualify J&M.

## CONCLUSION

For the foregoing reasons, BFL respectfully requests this Court disqualify J&M as counsel for Defendants.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)

In accordance with Local Rule 7.1(a)(3), the undersigned counsel for movant certifies that he has conferred with counsel for Defendants on November 20, 2024 and November 25, 2024, via video-conference technology, and Defendants' counsel advised that Defendants oppose the relief sought herein.

Date:   November 27, 2024

Respectfully submitted,

**ALLEN, DYER, DOPPELT & GILCHRIST, P.A.**

**Robert H. Thornburg**
Robert H. Thornburg
Florida Bar No. 630829
E-mail: rthornburg@allendyer.com
Giulia C. Farrior
Florida Bar No. 1011300
E-mail: gfarrior@allendyer.com
James R. Leahy
Florida Bar No. 1044500
E-mail: jleahy@allendyer.com
121 Alhambra Plaza, Suite 1250
Coral Gables, FL 33134
Telephone: 305-374-8303
Facsimile: 305-374-8306

*Counsel for Plaintiff BFL Metal Products Co. LTD.*