UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-22267-BLOOM/Elfenbein

BFL METAL PRODUCTS CO. LTD,

    Plaintiff,

v.

RDFN FUM NATURAL PRODUCTS, LTD.,
BRAEDEN W. PAULS, and
JOSIAH J. PAULS,

    Defendants.
_____/

**ORDER ON MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**THIS CAUSE** is before the Court upon Defendants Braeden W. Pauls and Josiah J. Pauls's Motion to Dismiss, ("Motion"), ECF No. [35]. Braeden W. Pauls ("BP") and Josiah J. Pauls ("JP") (collectively, "the Paulses") each filed declarations, which they attached to the Motion. ECF Nos. [35-1]; [35-2]. Plaintiff BFL Metal Products Co. LTD filed a Response, ECF No. [47], and the Paulses filed a Reply,[1] ECF No. [51]. The Court has reviewed the Motion, the briefings, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

**I.    BACKGROUND**

Plaintiff asserts several claims of trademark infringement relating to its line of vaping products. ECF No. [16] ¶ 42, n.1. Plaintiff is a Chinese limited company that "designs, develops, creates, and makes a variety of disposable vaping products." *Id.* ¶ 1. Around July 21, 2022,

---

[1] Defendant RDFN FUM Natural Products, Ltd. ("RDFN") did not join or adopt the Motion to Dismiss. Therefore, it is not affected by the subsequent analysis. When the Complaint refers to all three Defendants, the Court will refer to them as "Defendants." The Court will refer to BP and JP collectively as the "Paulses." When necessary to refer to the Paulses individually, the Court will use their initials.

Plaintiff obtained the rights to the "'FUM Registration' for the standard character mark FUM in connection with e-liquids, flavoring solutions, and chemical flavorings to refill electronic cigarette cartridges in International Class 030 and electronic cigarettes in International Class 034." *Id.* ¶ 42. The Trademark Application, which matured into the FUM Registration, was filed with the United States Patent and Trademark Office around May 2, 2014 and claims a first use date in interstate commerce of February 3, 2014. *Id.* ¶ 43. RDFN is a Canadian Federal Corporation, located in Canada, and a "manufacturer, distributor, wholesaler, retailer and [online] seller of flavored inhalers" which uses the name "FÜM." *Id.* ¶¶ 6-7. The Paulses are co-founders of RDFN. *Id.* ¶¶ 16, 22.

Plaintiff's First Amended Complaint ("Complaint") asserts three claims against all Defendants: Federal Trademark Infringement Under 15 U.S.C. § 1114 (Count I); Federal Unfair Competition—Passing Off Under 15 U.S.C. § 1125(a) (Count II); and Florida Common Law Unfair Competition (Count III). *Id.* at 44-47. Plaintiff alleges that Defendants have infringed upon Plaintiff's "trademark rights for the FUM Name and FUM Logo Mark" by "marketing, advertising, promoting, offering for sale and selling the Infringing Products under the Implicated Name and the Implicated Logo, all without [Plaintiff's] authorization, permission and/or endorsement." *Id.* ¶¶ 54-55. The Complaint includes screenshots from several websites, including, *inter alia,* RDFN's official website, YouTube videos featuring BP, and the Paulses' LinkedIn pages. *Id.* at 4-6, 8-16, 22-31, 33-38. Those images, Plaintiff alleges, demonstrate that BP "as co-founder, the CEO, member of the board of directors, and former director of operations for RDFN, is a moving force behind RDFN's unauthorized and improper adoption selection, use, and display . . . of the Implicated Name and Implicated Logo[.]" *Id.* ¶ 22. Similarly, the Complaint alleges that JP "as a co-founder, member of the board of directors, online brand

builder and marketing decision maker, is also a moving force behind RDFN's unauthorized and improper adoption, selection, use, and display . . . of the Implicated Name and the Implicated Logo[.]"[2] *Id.* ¶ 29. Plaintiff states "Defendants launched the three Unauthorized FUM Webpages" which "display the Infringing Products [and] noticeably display and brandish the Implicated Name and Implicated Logo. As shown on the Unauthorized FUM Webpages, the Implicated Name and the Implicated Logo are colorable imitations of [Plaintiff's] FUM marks." *Id.* ¶¶ 55-57.

On December 11, 2024, RDFN filed its Answer and Affirmative Defenses. ECF No. [34]. The Paulses filed the instant Motion, arguing the Court lacks personal jurisdiction over them. ECF No. [35]. The Paulses state they are "Canadian residents who have no contacts with Florida. Because all the activities attributed to them were in their corporate capacity, and none in their personal capacity, they are protected by the corporate shield doctrine and cannot be sued in Florida." *Id.* at 2. Plaintiff responds that the corporate shield doctrine does not protect the Paulses from personal jurisdiction because the Paulses are alleged to have committed trademark infringement, which is an intentional tort and an exception to the corporate shield doctrine. ECF No. [47] at 6.

## II. LEGAL STANDARD

### A. 12(b)(2) Motion to Dismiss

A "plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th

---

[2] In an affidavit attached to the Motion, JP contests some of these assertions, stating "I am not a corporate officer of RDFN[,]" "I am not a decision maker of RDFN[,]" and, "I am not a manager of RDFN." ECF No. [25-2] ¶¶ 15-17.

Cir. 2009)). "Vague and conclusory allegations do not satisfy this burden." *Catalyst Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 946 (11th Cir. 2018). "Rather, a plaintiff must 'present enough evidence to withstand a motion for directed verdict.'" *Id.* (quoting *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006)).

"Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "[T]he district court must construe all reasonable factual inferences in favor of the plaintiff to the extent that 'the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits.'" *N. Am. Sugar Indus.*, 124 F.4th at 1333 (quoting *Diamond Crystal Brands, Inc.*, 593 F.3d at 1257).

In order to determine whether a federal court sitting in diversity has personal jurisdiction over a nonresident defendant, the Court must consider two questions: (1) whether the law of the state in which it sits authorizes jurisdiction over the nonresident defendant; and (2) whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). This Court, sitting in diversity, must apply Florida's long-arm statute "'as would the Florida Supreme Court' and the Florida District Courts of Appeal, 'absent some indication that the Florida Supreme Court would hold otherwise.'" *Catalyst,* 748 F. App'x at 946 (quoting *Louis Vuitton*, 736 F.3d at 1352).

### i. Florida's Long-Arm Statute

"Florida's long-arm statute provides that a nonresident 'submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from . . . [c]ommitting a tortious act within this state.'" *Catalyst,* 748 F. App'x at 946 (quoting Fla. Stat. § 48.193(1)(a)(2)). "For purposes of personal jurisdiction under Florida law, the corporate shield doctrine creates a 'distinction between a corporate officer acting on one's own and a corporate officer acting on behalf of one's corporation.'" *Louis Vuitton*, 736 F.3d at 1354-55 (quoting *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993)). This distinction stems from the determination that it would be "unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Id.* at 1355 (quoting *Doe*, 620 So.2d at 1006). "Importantly, however, under Florida law, this corporate shield doctrine is inapplicable where the corporate officer commits intentional torts." *Id.*

### ii. Due Process Clause

In order to determine whether the exercise of personal jurisdiction would comport with the Due Process Clause, courts apply a three-part test, which examines:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton*, 736 F.3d at 1355 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 474-75 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984); and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The plaintiff bears the

5

burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id.* (quoting *Diamond Crystal*, 593 F.3d at 1267).

### III. DISCUSSION

To establish personal jurisdiction, Plaintiff has the initial burden of "alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *N. Am. Sugar Indus.*, 124 F.4th at 1333 (quoting *Mazer*, 556 F.3d at 1274). First, Plaintiff must establish that the Paulses are within reach of Florida's long-arm statute, which provides for both general and specific personal jurisdiction. *See Louis Vuitton*, 736 F.3d at 1352. Plaintiff argues the Court has specific personal jurisdiction over the Paulses via Florida's long-arm statute, which "authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Id.* As in *Louis Vuitton*, Plaintiff alleges Defendants engaged in trademark infringement, which falls within the "tortious act" provision of Florida's long-arm statute. ECF No. [47] at 4-5 (quoting Fla. Stat. § 48.193(1)(a)(2)).

The Paulses argue that they "are Canadian residents who have no contacts with Florida." ECF No. [35] at 2. In his affidavit, BP does not refute any of Plaintiff's allegations regarding his role or involvement in RDFN. ECF Nos. [35-1]. JP states that he is "not a corporate officer," "a decision maker" or a "manager" of RDFN. ECF No. [35-2]. In support of their Motion, the Paulses argue that "all the activities Plaintiff claims [the Paulses] engaged in were in their corporate, and not individual capacity." ECF No. [35] at 10. The Paulses acknowledge that "intentional misconduct by an individual defendant may constitute an exception to the corporate shield doctrine." *Id.* at 6. However, the Paulses argue "Florida courts require that the intentional

6

tort be committed for the corporate officer's personal benefit." *Id.* (quoting *Frida Kahlo Corp. v. Pinedo*, No. 22-cv-22399, 2023 WL 9473827, at *5 (S.D. Fla. Dec. 28, 2023)). Because the Complaint does not allege "'any specific acts' that [the Paulses] 'personally committed outside [their] corporate capacity that would amount to' intentional misconduct," they are protected by the corporate shield doctrine. *Id.* at 10 (quoting *Buccellati Holding Italia SPA v. Laura Buccellati, LLC,* No. 13-cv-21297, 2014 WL 11880964, at *5 (S.D. Fla. Jan. 24, 2014)).

Plaintiff acknowledges that "Florida's corporate shield doctrine creates a distinction for personal jurisdiction purposes between 'a corporate officer acting on one's own and a corporate officer acting on behalf of one's corporation.'" ECF No. [47] at 6. However, Plaintiff argues there is no requirement that the corporate officer act on his own behalf in order for a court to exercise personal jurisdiction when "[a] corporate officer . . . commits intentional misconduct, such as the intentional tort of trademark infringement[.]" *Id.* (quoting *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993). As the Eleventh Circuit has held, "a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." *ADT LLC v. Alarm Protection Tech. Fla., LLC*, 646 F. App'x 781, 787-88 (11th Cir. 2016) (quoting *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994).

Although "under Florida law, [the] corporate shield doctrine is inapplicable where the corporate officer commits intentional torts[,]" Plaintiff still must allege specific acts that would constitute an intentional tort on the part of the Paulses in order to establish personal jurisdiction. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802 (11th Cir. 2010) ("In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm

7

statute, the court must determine 'whether the allegations of the complaint state a cause of action.'") (quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)).

The Eleventh Circuit has stated that "[i]n order to prevail on federal claim[s] of trademark infringement and unfair competition, a trademark owner 'must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.'" *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012). Plaintiff has alleged that it has trademark rights in the "FUM" name. ECF No. [16] ¶ 42. To bring a claim against the Paulses, Plaintiff must also allege that the Paulses—not just RDFN—have adopted a mark or name that was the same or confusingly similar to Plaintiff's mark. In *Louis Vuitton*, the Eleventh Circuit determined that the district court could exercise personal jurisdiction over a foreign defendant because "the allegations in [Plaintiff's] complaint . . . established a prima facie case of jurisdiction over Mosseri." *Id.* at 1351. The complaint alleged that the Mosseri:

> (1) "conducts business throughout the United States, including within this Judicial District"; (2) engaged in the "sale of counterfeit and infringing Louis Vuitton branded products within this Judicial District through multiple fully interactive commercial websites"; (3) purposefully directed illegal activities "towards consumers in . . . Florida through the . . . sale of counterfeit Louis Vuitton branded goods into the State"; (4) was "selling and/or offering for sale counterfeit products, including at least handbags and wallets, using trademarks which are exact copies of the Louis Vuitton Marks"; and (5) was "actively . . . advertising, distributing, selling . . . substantial quantities" of these infringing goods in Florida and elsewhere.
>
> *Id.*

Plaintiff has failed to make specific allegations as to the Paulses' conduct.[3] Indeed, the Complaint only states that "*RDFN* advertises and sells in interstate commerce throughout the United States (and including throughout South Florida) a line of flavored inhalers ('Infringing Products') under the name FÜM (the 'Implicated Name') as well as the following logo ('Implicated Logo')." ECF No. [16] ¶ 7 (emphasis added). By merging the allegations against RDFN with those regarding the Paulses, the Complaint insufficiently alleges those actions taken by the Paulses constitute the intentional tort of trademark infringement. *See id.* ¶ 32 ("Defendants further advertise, market, and promote the underlying implicated inhaler products under Implicated Name and the Implicated Logo within this Judicial District–including the operation of all three Unauthorized FUM Webpages."); *Id.* ¶63 ("Defendants' improper and unauthorized use of the Implicated Name and Logo has already caused confusion as to the source of BFL and/or Defendants' products."); *Id.* ¶68 ("Defendants have offered for sale and/or sold the Infringing Products in interstate commerce, bearing Implicated Mark and the Implicated Logo").

Plaintiff's allegations specific to BP or JP relate to their affiliation with RDFN, which is insufficient to establish that they, as individuals, committed an intentional tort, even if RDFN may have committed trademark infringement. *LaFreniere v. Craig-Myers*, 264 So. 3d 232, 239 (Fla. 1st DCA 2018) ("In each of [the] cases where jurisdiction was found, the plaintiff produced evidence of the specific conduct on the part of the corporate officer that constituted a fraud or intentional tort. In each case, the nonresident corporate officer personally and intentionally engaged in the tortious conduct[.]") (quoting *Rensin v. State, Office of Att'y Gen., Dep't of Legal*

---

[3] In its Response, Plaintiff reframes the allegations in its Complaint to suggest that the Paulses had greater personal involvement than it originally alleged in the Complaint. ECF No. [47] at 2-3 (detailing the Paulses' "personal involvement" with "RDFN's prior and ongoing infringement"). However, Plaintiff may not cure the deficiencies in its Complaint via its Response to the Motion. *Miles v. Carnival Corp.*, No. 24-cv-22767, 2025 WL 587055, at *5 (S.D. Fla. Feb. 24, 2025) ("To the extent that Plaintiff raises new factual allegations . . . in her Response, the Court disregards those allegations when deciding a motion to dismiss.").

Case No. 24-cv-22267-BLOOM/Elfenbein

*Affairs*, 18 So. 3d 572, 575-76 (Fla. 1st DCA 2009). "Florida courts have interpreted [the intentional tort] exception [to the corporate shield doctrine] as requiring the defendant to have personally and intentionally engaged in tortious conduct that was 'calculated to inflict a direct injury upon a resident of Florida.'" *Harrison v. NC3 Sys., Inc.*, 395 So. 3d 657, 663 (Fla. 6th DCA 2024) (quoting *Rensin*, 18 So. 3d at 576). An individual cannot be held responsible for trademark infringement solely by virtue of the fact that they are a corporate officer for a company that committed trademark infringement.

"An individual is personally liable if she 'actively and knowingly caused the infringement.'" *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1164 (11th Cir. 2022) (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)). At no point does the Complaint allege facts supporting the allegation that BP or JP actively or knowingly caused the infringement. Rather, the Complaint attributes a collective state of mind to all three Defendants. The Complaint references Plaintiff's receipt of a cease-and-desist letter from another company, Highland Goods Inc., that was apparently intended for Defendants and states that this incident "further evidence[es] [Defendants'] willful intent[.]" ECF No. [16] ¶¶ 64-66. Plaintiff fails to explain how a separate allegation of trademark infringement by a different company establishes BP's or JP's individual intent to infringe upon Plaintiff's trademark. Similarly, the Complaint offers a conclusion that "[u]pon information and belief, Defendants' acts of infringement are willful," but does not allege that the Paulses were even aware of Plaintiff's mark. *Id.* ¶¶ 105, 118, 122.

As to BP, Plaintiff only alleges that he is a co-founder, CEO, director of operations, and member of the board of directors of RDFN. ECF No. [16] ¶¶ 15, 16, 18. The Complaint also includes an image of BP with the Implicated Logo displayed over his shoulder but does not

10

provide any context to the video. *Id.* at 4. The mere inclusion of images of BP next to the Implicated Name and Implicated Logo does not constitute sufficient allegations that BP has committed an intentional tort. Nor does the fact that BP has publicly spoken about RDFN, without more, necessarily entail that he has committed an intentional tort. *See, e.g.*, *id.* ¶ 7, 8.

To the extent the Complaint alleges the Paulses were "moving force[s] behind RDFN's" trademark infringement and unfair competition, ECF No. [16] ¶¶ 22, 29, 67, 73, "[t]hese vague and conclusory allegations merely recite the elements of the intentional tort exception without providing facts from which the Court could draw a favorable inference." *Morales v. Racetrac Petroleum, Inc.*, No. 17-cv-1115, 2017 WL 6320299, at *2 (M.D. Fla. Dec. 11, 2017). The Complaint contains no factual allegations supporting Plaintiff's assertion that the Paulses were "moving forces" behind RDFN's commission of intentional torts other than they hold various positions at the company. As the Paulses point out, the plaintiff in *Frida Kahlo Corp. v. Pinedo* similarly alleged that a corporate officer committed a tortious act in Florida by virtue of the fact that the individual "is an officer and the owner of Familia Kahlo, and Familia Kahlo identifies as [the corporate officer's] representative in the cease and desist letters." No. 22-cv-22399, 2023 WL 9473827, at *5. The complaint in *Frida Kahlo* "contain[ed] no allegations showing that [the officer] was *personally* involved in sending the letters to Florida or manifested a specific intent to interfere with Plaintiffs' licensee agreements in Florida." *Id.* Therefore, there was no personal jurisdiction over the foreign defendant. *Id.* at *7.

As to JP, the Complaint includes images of his social media accounts in which he appears to be "touting RDFN's online brand building done by him and/or under his direction and control." ECF No. [16] ¶ 28. As with BP, merely identifying JP as "(1) Co-Founder of RDFN, (2) Graphic Designer for RDFN's marketing, (3) [the former] Head of Content, (4) [the former]

11

supplies manager, and (5) [the former] head of supply relations" do not establish the elements of an intentional tort. *Id.* ¶ 25. The Complaint does not allege that JP was aware of Plaintiff's brand, specifically selected the Infringing Mark, or marketed the RDFN brand in order to confuse consumers. It merely alleges a conclusory statement that he was "a moving force" behind RDFN's alleged trademark infringement. ECF No. [16] ¶ 29.

Because the Complaint has not alleged that the Paulses, as individuals, have committed an intentional tort, Plaintiff has failed to establish jurisdiction over the Paulses under Florida's long-arm statute. *Louis Vuitton*, 736 F.3d at 1350. Because personal jurisdiction cannot be exercised over the Paulses under the long-arm statute, the Court need not address whether the exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Paulses' Motion, **ECF No. [35]**, is **GRANTED**.

2. The Complaint, **ECF No. [16]** is **DISMISSED WITHOUT PREJUDICE** as to Defendants Braeden W. Pauls and Josiah J. Pauls.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 31, 2025.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of Record